1

2

3

4

5

6

7

8                         **UNITED STATES DISTRICT COURT**

9                         **EASTERN DISTRICT OF CALIFORNIA**

10

11   VIRGINIA M. SALINAS,                    **Case No. 1:15-cv-00976-EPG**

12              Plaintiff,                   **ORDER REGARDING PLAINTIFF'S**
                                             **SOCIAL SECURITY COMPLAINT**
13        v.

14   CAROLYN W. COLVIN, Acting
     Commissioner of Social Security
15
                Defendant.
16
        **I.   INTRODUCTION**
17
            Plaintiff Virginia M. Salinas ("Plaintiff") seeks judicial review of a final decision by the
18
     Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for
19
     disability insurance benefits pursuant to Title II of the Social Security Act.  Plaintiff timely filed
20
     her opening brief on March 24, 2016, but Defendant failed to file a timely opposition brief.  (ECF
21
     No. 15.)  On July 20, 2016, the Court notified the parties that it would take the matter under
22
     submission without oral argument to determine whether Plaintiff had demonstrated that the ALJ
23
     committed legal error as a matter of law.[1]  *Martinez v. Stanford*, 323 F.3d 1178, 1182 (9th Cir.
24
     2003); *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995).  The matter is now before the Court.
25
        **II.   BACKGROUND AND PRIOR PROCEEDINGS**[2]
26
            Plaintiff was 46 years old at the alleged onset date of her disability.  AR 71.  Plaintiff has
27
     _____
28   [1] The parties consented to the jurisdiction of the United States Magistrate Judge. (ECF Nos. 9, 11.)
     [2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

a GED and most recently worked as an office tech for the California Department of Corrections and Rehabilitation from 2001 to 2011.  AR 222, 487.  Towards the end of her tenure at CDCR, Plaintiff took FMLA leave and was never cleared by her physician to return to the workplace.  AR 33, 50.  Plaintiff is divorced and lives alone.  AR 487.  She has five children.  AR 34.  She cannot drive.  AR 52.

Plaintiff's alleged physical conditions are fibromyalgia, chronic fatigue syndrome, anemia, arthritis, injuries in both ankles, and back pain.  AR 226.  On November 13, 2011, Plaintiff filed an application for disability insurance benefits under Title II alleging a disability beginning on September 22, 2010.  AR 189-193.  This application was denied initially on May 31, 2012 and on reconsideration on November 30, 201.  AR 71-88, 90-105.  Plaintiff filed a request for a hearing on December 13, 2012.  AR 125-126.  The hearing was then conducted before Administrative Law Judge Jennifer M. Horne (the "ALJ") on November 18, 2013.  AR 25.  On January 21, 2014, the ALJ issued an unfavorable decision determining that Plaintiff was not disabled.  AR 10-20.  Plaintiff filed an appeal of this decision with the Appeals Council.  The Appeals Council denied her appeal, rendering the order the final decision of the Commissioner.  AR 1-4.

Plaintiff now challenges that decision, arguing that:  (1) The ALJ erroneously rejected the opinion of Greg Hirokawa, Ph.D.; and (2) the ALJ failed to adequately explain her deviations from the Dictionary of Occupational Titles ("DOT") when determining that Plaintiff could perform work as a furniture rental consultant or ticket taker.

## III.    THE DISABILITY DETERMINATION PROCESS

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if:

> . . . his physical or mental impairment or impairments are of such severity that he
> is not only unable to do his previous work, but cannot, considering his age,

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. § 404.1520(a)-(f).  The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled.  20 C.F.R. § 404.1520(a)(4).  The ALJ must consider objective medical evidence and opinion testimony.  20 C.F.R. § 404.1527, 404.1529.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability; (2) whether the claimant had medically-determinable "severe" impairments;[3] (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) whether the claimant retained the residual functional capacity ("RFC") to perform her past relevant work;[4] and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the regional and national level. 20 C.F.R. § 404.1520(a)-(f).

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard.  AR 10-20.  In particular, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 22, 2010, the date specified in her application.  AR 12.  Further, the ALJ identified fibromyalgia as a medically determinable impairment.  AR 13.  Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or exceed any of the listed impairments.  AR 14.

Based on a review of the entire record, the ALJ determined that Plaintiff had the RFC to perform:  "less than a full range of light work as defined in 20 CFR 404.1567(b). The claimant

---

[3] "Severe" simply means that the impairment significantly limits the claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c).

[4] Residual functional capacity captures what a claimant "can still do despite [his or her] limitations." 20 C.F.R. § 404.1545. "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

can lift and carry 20 pounds occasionally and 10 pounds frequently, can sit and stand and/or walk 6 hours in an 8-hour workday, but can stand and/or walk just 20 minutes at [a] time, can occasionally reach with her bilateral upper extremities, can frequently handle, finger, grip, grasp, and reach overhead with the right upper extremity. The claimant can occasionally handle, finger, grip, and grasp with her left upper extremity. She can never climb or crouch, and can occasionally balance, stoop, kneel, and crawl. The claimant cannot work around heights or moving machinery and is limited to performing simple, routine, repetitive, unskilled work tasks due to her pain."  AR 14.  Plaintiff was not capable of performing her past relevant work as a clerk.  AR 18.  Plaintiff could, however, perform work as a furniture rental consultant or ticket taker, jobs that exist in significant numbers in the national economy.  AR 18.

**IV.    STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether: (1) it is supported by substantial evidence; and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id.*

**V.    DISCUSSION**

**A.  The Relevant Medical Evidence**

Plaintiff argues that the ALJ improperly considered the medical evidence and thus erroneously determined that Plaintiff was not disabled. Specifically at issue is the ALJ's consideration of Dr. Hirokawa's opinion. The following summary of the medical record is thus limited to this issue.

*i.  Truxtun Psychiatric Medical Group*

Plaintiff was treated by Shiquan Xiong, M.D. at the Truxtun Psychiatric Medical Group

between September 21, 2009 and June 28, 2010.  AR 535-544.  Plaintiff initially reported to the group complaining of "tightness, shortness of breath, palpitation, sweating, shaking, and [a] choking feeling."  AR 544.  She also discussed feeling "hopeless, helpless, extremely guilty" and expressed some suicidal ideation.  AR 544.  On September 29, 2009, Dr. Xiong refilled Plaintiff's prescriptions for Imitrex and Neurontin.  AR 543.  On November 2, 2009, Plaintiff reported that she was feeling much better, although by January 19, 2010 she was again reporting that she was feeling depressed.  AR 538, 542.  In February 2010, her symptoms were "in remission," although she still complained of headaches.  AR 536.

### ii.  Greg Hirokawa, Ph.D.

Dr. Hirokawa conducted a consultative examination of Plaintiff on May 16, 2012.  AR 486.  Plaintiff complained to Dr. Hirokawa of "[a]rthritis, fibromyalgia, and chronic fatigue syndrome."  AR 487.  She also detailed her history injuries sustained at work, culminating in her FMLA absences and the end of her employment.  AR 486.  She reported that she generally was able to "get[ ] along with people at work."  AR 487.  She explained that her daily activities included cooking, doing laundry, and sweeping.  AR 488.  Although she does not have any hobbies, she is capable of showering and "tries to exercise."  AR 488.

Dr. Hirokawa observed that Plaintiff was cooperative, made "fair eye contact," and had normal facial expressions and motor function.  AR 486.  Her speech was normal, she was fully oriented, and her recent memory appeared to be intact.  AR 488.  Her mood was depressed and her affect was within normal limits.  AR 488.  Based on his mental status examination, Dr. Hirokawa determined that Plaintiff's prognosis was "fair to poor" and the severity of her symptoms "was within the moderate range."  AR 489.  He noted that her "overall communication skills were fair to poor" and that the "likelihood of the claimant's medical condition improving within the next twelve months is poor."  AR 489.

Dr. Hirokawa noted that Plaintiff would have some functional limitations; she would have mild to moderate impairment in:  following simple instructions; following complex/detailed instructions; maintaining adequate pace or persistence; maintaining adequate attention/concentration; making social judgments and being aware of socially appropriate

behavior; and, functioning independently and sustaining an ordinary routine without special

supervision.  AR 489.  She would have moderate impairment in:  adapting to changes in job

routine; withstanding the stress of a routine workday; interacting appropriately with co-workers,

supervisors, and the public on a regular basis; and, accepting instructions from a supervisor and

responding appropriately to criticism.  AR 489.

The ALJ gave Dr. Hirokawa's opinion little weight.  AR 18.

**B. The ALJ' Deviations from the DOT**

At step five of the disability analysis, the Commissioner has the burden "to identify

specific jobs existing in substantial numbers in the national economy that [a] claimant can

perform despite [her] identified limitations." *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir.

1995); *see also* 20 C.F.R. § 404.1520(g).  To do so, the ALJ first assesses a claimant's "residual

functional capacity," defined as the most that a claimant can do despite the "physical and mental

limitations" caused by his impairments and related symptoms.  20 C.F.R. § 404.1545.  The ALJ

then considers potential occupations that the claimant may be able to perform by looking to the

DOT, which is the Social Security Administration's "primary source of reliable job information"

regarding jobs that exist in the national economy. *Zavalin v. Colvin*, 778 F. 3d 842 (9th Cir. 2015)

*citing Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990); *see also* 20 C.F.R.§§ 404.1569;

404.1566(d).  The DOT describes the requirements for each listed occupation, including both

physical and mental requirements. In addition to the DOT, the ALJ relies on the testimony of

vocational experts who testify about specific occupations that a claimant can perform in light of

her residual functional capacity. 20 C.F.R. § 404.1566(e); *Valentine v. Comm'r Soc. Sec. Admin.*,

574 F.3d 685, 689 (9th Cir. 2009).  Finally, to conclude the step five analysis, the ALJ determines

"whether, given the claimant's [residual functional capacity], age, education, and work

experience, he actually can find some work in the national economy." *Valentine*, 574 F.3d at 689;

*see also* 20 C.F.R. § 404.1520(g).

Plaintiff contends that the ALJ departed from the guidelines set by the DOT when the ALJ

found that Plaintiff could perform the job duties required for a furniture rental consultant and a

ticket taker.  Specifically, Plaintiff contends that the furniture rental consultant job requires

1   individuals to have level 3 reasoning abilities, while she is only capable of level 2 reasoning.[5]  In

2   addition, she argues that the ticket taker position requires "frequent handling," while she is

3   limited to only "occasional handling."  The ALJ does not explain these discrepancies, Plaintiff

4   argues, and has thus committed clear legal error.

5                    ***i.   Legal standards***

6          When a vocational expert testifies "about the requirements of a job or occupation, the

7   adjudicator has *an affirmative responsibility* to ask about any possible conflict between that  . . .

8   evidence and information provided in the [*Dictionary of Occupational Titles*]."  *Massachi v.*

9   *Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007), *quoting* SSR 00-4p (emphasis in original).  If there

10  is a conflict between the vocational expert's testimony and the requirements in the DOT, the ALJ

11  must "obtain a reasonable explanation" for that conflict.  *Id.* at 1153.  Any such explanation must

12  be supported by "persuasive evidence" in the record.  *Id.*  Thus, in examining vocational expert

13  testimony in conjunction with the DOT, an ALJ must "first determine whether a conflict exists."

14  *Id*.  "If it does, the ALJ must then determine whether the vocational expert's explanation for the

15  conflict is reasonable and whether a basis exists for relying on the expert rather than the

16  *Dictionary of Occupational Titles*."  *Id.*  Where an ALJ fails to ask if the vocational expert's

17  testimony conflicts with the DOT, the ALJ has erred.  *Id.*

18                   ***ii.   Analysis***

19         The vocational expert testified that Plaintiff could perform the functions of a furniture

20  rental consultant or a ticket taker.  AR 19.  In her decision, the ALJ noted that there was a

21  discrepancy between the vocational expert's testimony and the DOT:

22          Although the vocational expert's testimony is inconsistent with the information
            contained in the Dictionary of Occupational Titles (DOT), there is a reasonable
23          explanation for the discrepancy.  The vocational expert was asked about
            limitations not addressed in the DOT, specifically the impact of reaching
24          overhead and having to sit down after 20 minutes.  She based her answer on her
            more than 20 years of experience analyzing jobs and labor market surveys.

25

26  [5] Level 3 reasoning includes the ability to "[a]pply commonsense understanding to carry out instructions furnished in
    written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from
27  standardized situations."  295.357-018 FURNITURE-RENTAL CONSULTANT, DICOT 295.357-018.  Level 2
    reasoning, in contrast, requires the ability to "[a]pply commonsense understanding to carry out detailed but
    uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from
28  standardized situations."  344.667-010 TICKET TAKER, DICOT 344.667-010.

1    AR 19.

2        Plaintiff highlights two deviations from the DOT in the vocational expert's testimony:  (1)

3    a departure from the furniture rental consultant position's requirement of level 3 reasoning and

4    (2) a departure from the ticket taker position's requirement of frequent handling.

5        The first deviation is a clear discrepancy with the DOT:  the ALJ found that Plaintiff was

6    limited to "simple, routine, repetitive, unskilled work tasks" (AR 14) and such a limitation is

7    inconsistent with reasoning at level 3.  *Squier v. Astrue*, Case No. EDCV 06-1324 RC, 2008 WL

8    2537129, at *5 (C.D. Cal. June 24, 2008) ("A reasoning level of 3 is inconsistent with a limitation

9    to simple repetitive work.), *citing Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir.2005) (A

10   limitation to simple and routine work tasks "seems inconsistent with the demands of level-three

11   reasoning."); *see also Tudino v. Barnhart*, Case No. 06-CV-2487-BENJMA, 2008 WL 4161443,

12   at *10–11 (S.D. Cal. Sept. 5, 2008) ("Level-two reasoning appears to be the breaking point for

13   those individuals limited to performing only simple repetitive tasks.").  The furniture rental

14   consultant requires level 3 reasoning.  295.357-018 FURNITURE-RENTAL CONSULTANT,

15   DICOT 295.357-018.  There is no indication in the record or in the ALJ's decision that the ALJ

16   inquired into this discrepancy or offered any reason, persuasive or otherwise, why the discrepancy

17   is justified.  As a result, this deviation constitutes clear legal error.

18       The second deviation also presents a discrepancy with the DOT:  the ALJ found that

19   Plaintiff can "occasionally handle  . . . with her left upper extremity" and "frequently handle  . . .

20   with the right upper extremity" (AR 14), but the ticket taker position requires frequent handling.

21   344.667-010 TICKET TAKER, DICOT 344.667-010.  It is not clear whether the ALJ noted this

22   particular discrepancy with the DOT—the explanation in her decision seems to be discussing

23   reaching and sitting limitations, rather than handling limitations.  Although there was some

24   discussion at the hearing about the fact that only Plaintiff's right (non-dominant) hand could

25   frequently handle, neither the ALJ nor the vocational expert addresses why Plaintiff would be

26   able to perform a job that requires frequently handling when only her non-dominant hand can

27   frequently handle.  AR 63-66.  Indeed, the vocational expert appears to have been confused about

28   what the ALJ was asking at the hearing and the discussion quickly turned to the topic of sitting,

rather than handling, limitations.  AR 64 ("A. . . . Yes, Your Honor, I believe that these jobs could still be accomplished with only occasional use of the non-dominant hand. Q. Well, it would be occasional use of the dominant hand. So the individual is – A. Oh, I'm sorry. Yes. Oh, my goodness. I apologize, yes. I – no. These jobs require frequent use of the dominant hand.").  To make matters worse, the audio connection to the vocational expert at the hearing appears to have rendered some portions of her hearing testimony inaudible.  AR 64 ("A. Okay. Let me look at each job individually, and I do want to preface my response again by saying that the DOT does not specify which hands are used, so when it says (INAUDIBLE) or frequently handling, it could be just (INAUDIBLE) hand.").

Even assuming that the ALJ's decision demonstrates an understanding that a conflict between the vocational expert's testimony and the DOT exists with respect to handling limitations, it does not offer a reasonable explanation supported by persuasive evidence in the record to justify that conflict.  First, as noted above, the decision only appears to account for a distinction in sitting and reaching limitations, not handling limitations.  AR 19 ("The vocational expert was asked about limitations not addressed in the DOT, specifically the impact of reaching overhead and having to sit down after 20 minutes.").  Second, there is no evidence in the record— much less persuasive evidence—explaining why Plaintiff would be able to perform a job that requires frequent handling when only her non-dominant hand is capable of frequent handling.  Nor does the fifty percent erosion of jobs available mitigate the error here; it is not reasonable to say that a plaintiff is capable of performing fifty percent of jobs requiring frequent handling because one of her hands (but not the other) is still capable of frequent handling.  The ALJ's decision contains clear legal error because it fails to offer a reasonable explanation for its departures from the DOT.

### C.  The ALJ's Treatment of Dr. Hirokawa's Opinion

Although the Court has already determined that this case should be remanded to reconsider the conflict between the vocational expert's testimony and the DOT, the Court will also provide guidance on the second issue raised by Plaintiff so that the ALJ may further develop the medical record on remand.

*i.*   *Legal standards*

The weight given to medical opinions depends in part on whether they are offered by treating, examining, or non-examining (reviewing) professionals.  *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual.  *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).

An ALJ may reject an *uncontradicted* opinion of a treating or examining medical professional only for "clear and convincing" reasons.  *Lester*, 81 F.3d at 831.  In contrast, a *contradicted* opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons.  *Lester*, 81 F.3d at 830.  While a treating professional's opinion is generally accorded superior weight, if it is contradicted by an examining professional's opinion (when supported by different independent clinical findings), the ALJ may resolve the conflict.  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir.1995), *citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989).  The regulations require the ALJ to weigh the contradicted treating physician opinion, *Edlund v. Massanari*, 253 F.3d 1152 (9th Cir. 2001), except that the ALJ need not give it any weight if it is conclusory and supported by minimal clinical findings.  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); *see also Magallanes*, 881 F.2d at 751.

The opinion of a non-examining physician may constitute substantial evidence when it is "consistent with independent clinical findings or other evidence in the record."  *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).  Such independent reasons may include laboratory test results or contrary reports from examining physicians, and plaintiff's testimony when it conflicts with the treating physician's opinion.  *Lester*, 81 F.3d at 831, *citing Magallanes*, 881 F.2d at 751–55.

*ii.*   *Analysis*

The ALJ rejected Dr. Hirokawa's findings regarding Plaintiff's functional limitations, saying that the opinion "is inconsistent with the observations made by Dr. Hirokawa during the

consultative examination."  AR 18.  The ALJ did not offer any other reasons to discount Dr. Hirokawa's findings.

An ALJ can reject a medical opinion if the opinion is unsupported by the opinion provider's own notes.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (rejecting physician opinion where physician's "other recorded observations and opinions" contradicted his ultimate conclusions).  Some of Dr. Hirokawa's ultimate conclusions do not appear to be entirely consistent with his observations.  For example, Dr. Hirokawa noted that Plaintiff was cooperative and "interacted appropriately with the examiner and office staff throughout the evaluation."  AR 486.  Despite this observation, Dr. Hirokawa concluded that Plaintiff would be moderately impaired in her ability to "interact appropriately with co-workers, supervisors, and the public on a regular basis."  AR 489.  He also determined that Plaintiff would be moderately impaired in her ability to "accept instructions from a supervisor and respond appropriately to criticism."  AR 489.  These two statements are a thin reed on which to rest the rejection of Dr. Hirokawa, and it is doubtful whether they would qualify as "substantial evidence."  Because the case will be remanded to re-examine the conflicts between the vocational expert testimony and the DOT, the ALJ may also wish to re-examine Dr. Hirokawa's opinion and its weight in the decision, and provide further reasons if the ALJ ultimately decides to discount Dr. Hirokawa's opinion after further examination.

///
///
///
///
///
///
///
///
///
///

1    **VI.    CONCLUSION**

2           Based on the foregoing, the Court finds that the ALJ's decision is not supported by

3    substantial evidence in the record or free of clear legal error.  Accordingly, this Court GRANTS

4    Plaintiff's appeal from the administrative decision of the Commissioner of Social Security and the

5    case is REMANDED to the Social Security Administration.  On remand, the Social Security

6    Administration shall further consider and develop the testimony of the vocational expert and Dr.

7    Hirokawa's opinion, consistent with this order.  The Clerk of the Court is DIRECTED to enter

8    judgment in favor of Plaintiff Virginia M. Salinas and against Defendant Carolyn W. Colvin,

9    Commissioner of Social Security.

10

11   IT IS SO ORDERED.

12       Dated:   **August 23, 2016**                      /s/ _Erica P. Grosjean_

13                                                         UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                    12